MARCUS TELESFORD,

                            Plaintiff,

   - vs -                                                    DECISION AND ORDER
                                                             15-CV-6191 CJS

JAMES ESGROW, *et al.*,

                            Defendants.

## INTRODUCTION

**Siragusa, J.** Before the Court is Defendants' second motion, filed on November 4, 2016, ECF No. 47, seeking summary judgment. For the reasons stated below, the Court grants the application.

## BACKGROUND

On or about April 27, 2013, plaintiff Marcus Telesford ("Telesford") was served with a misbehavior report at Southport Correctional Facility ("Southport") written by Correctional Officer Tillinghast ("Tillinghast") relating to contraband found during a search. On May 2, 2013, Telesford moved from Southport to Elmira Correctional Facility Mental Health ("Elmira"). At Elmira, Hearing Officer James Esgrow ("Esgrow") conducted a disciplinary hearing concerning the misbehavior report. At the hearing, Telesford complained that the officer assigned to assist him did not, and that his legal papers were still at Southport. Esgrow asked Telesford what documents he wanted, and then began hearing witness testimony. Telesford objected at the hearing that he did not receive documentary evidence to review until after witnesses had testified. At his deposition, Telesford stated that at the time of the hearing, Esgrow tried his best to provide him with the documents

he needed. However, Telesford alleges that after the hearing, he learned that Esgrow purposely withheld relevant documents.

At the hearing, Esgrow showed Telesford a letter recovered during a search of Inmate Anthony Johnson's ("Johnson") cell. Telesford contends that Defendants did not make the letter a part of the hearing record. Esgrow also marked three documents containing samples of Telesford's handwriting. Esgrow asked Telesford what witnesses he wanted to call and Telesford stated, *inter alia*, Inmates Johnson and Harding[1], as well as Tillinghast. Telesford further states that he requested the name of a staff member with whom Esgrow held a conversation about Johnson's handwriting sample, but that Esgrow refused to name the staff member.

After receiving requested documents, Telesford made an additional witness request asking for Sergeant Hanna, Deputy Superintendent of Security, and asking to recall Tillinghast. Esgrow called the witnesses requested. Telesford claims that Esgrow refused to allow cross-examination of Tillinghast about the handwriting samples. Additionally, Telesford points out that the first time he testified, Tillinghast stated he kept the contraband letter on his person from April 27, 2013, when he found it, until April 30, 2013. However, the second time he testified, Telesford contends that Tillinghast said he kept the letter in his locker during the day.

Telesford requested a sample of Johnson's handwriting. Telesford points out that Johnson was found guilty of possessing gang material in his cell on April 27, 2013, and of authoring the letter that Telesford was found guilty of writing. In response to Telesford's

---

[1] Identified by last name only, no first name indicated in Hearing Transcript, which is part of ECF No. 47-5.

request, Esgrow showed him a sample of Johnson's signature on a religious designation form from the records of the Department of Correctional and Community Services ("DOCCS"). Telesford contends that Esgrow did not make the document a part of the hearing file. Esgrow stated that the writing on the form, including the hand-lettered portion, was all by Johnson. Telesford points out, again, that the source of the authenticity of Johnson's handwriting sample from DOCCS's files was an unidentified staff member who had an off-the-record conversation with Esgrow.

Telesford quotes from the hearing transcript, which contains the following questions and answers pertinent to Telesford's complaint:

> CHO: Thank you Mr. Telesford, a short while ago you were provided a copy of a document that is labeled facility general contraband log and entry 16-13 says document Johnson 09A0681 B-9-2 gang note and you have a copy of that correct?
>
> IM: All right, so this document you are providing me this is the evidence locker where this contraband was placed inside the locker am I correct?
>
> CHO: A document is a document.
>
> IM: Okay, but my thing is I am objecting to that.
>
> CHO: Okay.
>
> IM: Why I'm objecting to that is cause the hearing officer provided me a document after you called the witness so I didn't.
>
> CHO: What new information is in there Mr. Telesford, how are you prejudiced?
>
> IM: I'm prejudiced by the fact that the procedure for the tier assistant process is for the tier assistant to provide me with all documents prior to me calling the witness, we called the witness and I didn't have a chance to cross examine the witnesses about these documents. Because you decided to provide these documents after you brought the witnesses.
>
> CHO: What information was in there that you.

IM: Officer Tillinghast came to this hearing testified to the fact that I asked him simply where did you keep the documents on him at all times. Officer Tillinghast first testified that these documents were on him at all times, 3 days later you decided to provide me with a document of the claim of a chain of custody, I find out that the chain of custody was based on the evidence locker on April 30th and I'm objecting to that.

CHO: And you requested Telesford a second, Tillinghast a second time and you got him.

IM: Right, I requested him second time, but I wasn't provided with the evidence log.

CHO: What's in that evidence log that you haven't had before?

I.M: The evidence log clearly states that he put this in the evidence log and he signed the log book and somebody else made a signature next to it, a lieutenant and I should've had the opportunity to call this lieutenant as a witness, this is what's in this log.

\* \* \*

IM: Alright okay, now I say before on the record that from the time of this hearing the record clearly claims that the hearing officer didn't allow me to prepare a proper defense he didn't deny me the opportunity for tier assistance a critical part, certain material of evidence was given to me after he called witnesses, and he personally went and got these documents and played the part of a tier assistant, that means he went and got these documents and spoke off the record, let the hearing reflect that he sent officer Tillinghast an email in fact nobody knows what this email is about, this email is not in the record. Who is to say that he didn't prep officer Tillinghast as what to say when he came to the hearing, Then I asked hearing officer Esgrow where he got the sample letter from, so I say who is they, and he told me he can't tell me who they is. I am objecting to that, and object to the fact that off the record conversation with other parties about what's going on in the tier hearing that's not presented here, and this whole tier hearing process I have been deprived of my Due Process rights and I have not received a fair hearing, it's clear and evident.

Disciplinary Hearing Transcript 44–47[2], Nov. 4, 2016, ECF No. 47-5, attached to Def.s'

Ex. A. As a result of the above, Esgrow called Lieutenant Holton who had witnessed

---

[2] Page numbers are from the Hearing Transcript, which is part of ECF No. 47-5; these are not the pages for the entire exhibit.

Tillinghast putting the contraband letter into the contraband locker. Disciplinary Hearing Transcript 49. Telesford also objected to Tillinghast's testimony that the note found in Johnson's cell had handwriting on it, in fact, that did not match Johnson's handwriting, since Tillinghast had not reviewed a sample of Johnson's handwriting. Further, Telesford objected to Esgrow making his own independent assessment of whether the contraband letter contained Telesford's handwriting.

Esgrow found Telesford guilty of the charges in the misbehavior report (104.11 violent conduct, and 105.13 gangs). He sentenced Telesford to 18 months in the Special Housing Unit ("SHU"), and loss of privileges. On July 3, 2013, Superintendent Paul Chappius, Jr., ("the superintendent") denied discretionary review, writing in his denial:

> This is the 11th time inmate Telesford had been guilty of a gang related offense. In the letter authored by inmate Telesford he is ordering the assault of at least two inmates. The type of security precautions necessary to house this inmate are available only In a Special Housing Unit. His presence in the general population poses a substantial risk to the safety of other inmates and staff.

Superintendent Review of Disciplinary Dispositions for Hearing Involving a SHU/Keeplock Sanction of 9 months or more, Nov. 4, 2016, ECF No. 47-5, *attached to* Def.s' Ex. C.

Telesford commenced a proceeding in Supreme Court, Chemung County, under New York Civil Procedure Law and Rules Article 78 seeking to overturn the disposition. The Supreme Court denied the application. On November 6, 2014, the New York State Supreme Court, Appellate Division, Third Judicial Department, affirmed the denial of the application without an opinion. *Matter of Telesford v. Annucci*, 2014 NY Slip Op 07548, 1, 122 A.D.3d 987, 987, 995 N.Y.S.2d 533 (N.Y. App. Div. 3d Dep't 2014). The New York

Court of Appeals denied leave to appeal. *Matter of Telesford v. Annucci*, 2015 NY Slip

Op 72471, 25 N.Y.3d 905, 10 N.Y.S.3d 525, 32 N.E.3d 962 (2015).

## STANDARDS OF LAW

### *Summary Judgment*

Summary judgment may not be granted unless "the pleadings, depositions, an-

swers to interrogatories, and admissions on file, together with the affidavits, if any, …

demonstrate the absence of a genuine issue of material fact," *Celotex Corp. v. Catrett*,

477 U.S. 317, 323 (1986), and "the movant is entitled to judgment as a matter of law,"

Fed. R. Civ. P. 56(a) (2015). "In moving for summary judgment against a party who will

bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing

to an absence of evidence to support an essential element of the nonmoving party's

claim." *Gummo v. Village of Depew,* 75 F.3d 98, 107 (2d Cir. 1996) (citation omitted).

The burden then shifts to the non-moving party to demonstrate facts showing that

there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250

(1986). To do this, the non-moving party must present evidence sufficient to support a

jury verdict in its favor. *Id.* at 249. "[F]actual issues created solely by an affidavit crafted

to oppose a summary judgment motion are not 'genuine' issues for trial." *Hayes v. N.Y.*

*City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996). Summary judgment is appropriate

only where, "after drawing all reasonable inferences in favor of the party against whom

summary judgment is sought, no reasonable trier of fact could find in favor of the

non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir. 1993). The parties may

only carry their respective burdens by producing evidentiary proof in admissible form.

Fed. R. Civ. P. 56(c)(1). The underlying facts contained in affidavits, attached exhibits,

and depositions, must be viewed in the light most favorable to the non-moving party.

*United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

### *Irby Notice*

Pursuant to Western District of New York Local rule 56(b), Defendants provided notice to Plaintiff in accordance with the Second Circuit's requirement set out in *Irby v. New York City Transit Authority*, 262 F.3d 412 (2d Cir. 2001). The notice provided with the moving papers stated as follows:

Revised 05/01 WDNY

# <u>IMPORTANT NOTICE TO PRO SE LITIGANTS</u>

## RULE 56 MOTIONS FOR SUMMARY JUDG-MENT

This Notice is to advise you that a party in your lawsuit has filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, which means that summary judgment will be granted if the Court finds that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

**Failure to Respond to This Motion For Summary Judgment May Result in The Grant of Judgment in Favor of The Party Seeking Summary Judgment and The Dismissal of All or Part of The Case.**

### <u>Opposing Affidavits and Exhibits</u>

Therefore, if the motion seeks summary judgment against you, you **MUST** submit opposing papers in the form of one or more affidavits (or affirmations) made upon the personal knowledge of the person signing each affidavit. Each affidavit must set forth admissible facts and must show that the person submitting that affidavit is competent to testify as to the matters stated therein (because he or she has personal knowledge of the facts set forth in the affidavit). If you wish to submit exhibits in opposition to the motion, you may attach to the affidavit (or submit separately) sworn or certified copies or all

papers or parts thereof which are referred to in an affidavit.

### Statement of Material Facts Requiring a Trial

You **MUST** also submit a <u>separate</u>, short, and concise statement of the material facts as to which you contend there exists a genuine issue which must be tried. *See* Rule 56 of the Local Rules of Civil Procedure (available on the Western District web site at www.nywd.uscourts.gov). **Note** that all of the material facts which have been set forth in the statement served on you by the moving party (which that party claims are material facts about which there is <u>no</u> genuine issue to be tried) <u>will be deemed to have been admitted by you unless you controvert the facts in your statement of material facts presenting a genuine issue requiring a trial</u>.

### Memorandum of Law

You **MUST** also submit a <u>separate</u> answering memorandum of law, Local Rule 7.1(e), which may not exceed 25 pages in length without prior approval of the Court, Local Rule 7.1(f). Failure to comply may result in the motion being decided against the non-complying party.

W.D.N.Y. Notice to Pro Se Litigants.

### Section 1983

Plaintiff brings this action pursuant to 42 U.S.C. § 1983. In order to state a claim under § 1983, plaintiff must allege (1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Dwares v. City of New York*, 985 F.2d 94, 98 (2d Cir. 1993). Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

### Personal Involvement

A prerequisite for liability under a § 1983 claim is "personal involvement" by the defendants in the alleged constitutional deprivation. *Spencer v. Doe*, 139 F.3d 107, 112 (2d Cir. 1998).

> A defendant may be "personally involved" in causing a constitutional deprivation if: (1) defendant participated directly in the alleged infraction; or (2) acting in a supervisory capacity, defendant (a) failed to remedy a continuing or egregious wrong after learning of a violation, (b) created a policy or custom under which the unconstitutional practices occurred or allowed such policy or custom to continue, or (c) was "grossly negligent" in managing subordinates who actually caused the constitutional deprivation.

*Candelaria v. Coughlin*, 787 F. Supp. 368, 372 (S.D.N.Y. 1992); *Colon v. Coughlin*, 58 F.3d 865, 874 (2d Cir. 1995) ("The bare fact that [the defendant] occupies a high position in the New York prison hierarchy is insufficient to sustain [plaintiff's] claim"). A claim which fails to demonstrate a defendant's personal involvement in the alleged constitutional deprivation is subject to *sua sponte* dismissal. *Montero v. Travis*, 171 F.3d 757, 761-62 (2d. Cir. 1999); *see Neitzke v. Williams*, 490 U.S. 319, 323 n. 2, 109 S. Ct. 1827, 1830 n. 2, 104 L.Ed.2d 338 (1989).

### ANALYSIS

#### Claims Against Superintendent Chappius

Defendant Superintendent Phil Chappius ("Chappius") moves for judgment on Plaintiff's claim that he was grossly negligent in supervising Hearing Officer James Esgrow ("Esgrow"). The allegations against Chappius in the complaint are as follows:

> 24.) The actions of Defendant Paul Chappius in gross negligence in managing the hearing officer James Escrow [sic] duties performing assistance or hearings regarding plaintiff [sic] superintendent hearing constituted deliberate indifference to plaintiff [sic] due process of law in violation of the Fourteenth Amendment to the United States Constitution and placing the

> plaintiff in the special housing unit for eighteen months subjecting the plain-
> tiff to cruel and unusual punishment and atypical and significant hardship
> which is a violation of the Eight Amendment of the United States Constitu-
> tion.

ECF No. 1 ¶ 24. In his statement of facts, Plaintiff points out that Chappius's counsel sent a declaration signed by Chappius in which he stated "he had no involvement in conducting a discretionary review of Plaintiff's hearing." Pl.'s Statement of Facts at 20, ECF No. 51. Chappius has supplied a declaration by him signed on October 14, 2016, in which he states that he "was not involved in the disciplinary hearing" and in conducting his discretionary review he "focused on the sanction imposed." Chappius Decl. ¶¶ 5, 10, Nov. 4, 2016, ECF No. 47-4.

Chappius argues that Plaintiff has failed to show he was personally involved in the alleged constitutional violation. The Court agrees. Plaintiff has not submitted evidentiary proof in admissible form that Chappius was grossly negligent in supervising the hearing officer. Accordingly, Chappius is entitled to judgment on this claim.

Turning to the superintendent's discretionary review of Telesford's sentence, the Supreme Court has held that, "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Telesford has not shown that the superintendent, by refusing to reduce his sentence, was violating a clearly established constitutional right. The superintendent provided a specific reason related to Telesford's past misbehavior as to why he was not going to reduce Telesford's sentence. Therefore, Chappius is entitled to judgment on this claim as well.

*The Article 78 Proceeding and Collateral Estoppel*

The Court first addresses the defense argument that Telesford's choice to bring an Article 78 proceeding collaterally estops him from raising the contentions in this § 1983 lawsuit. N.Y. C.P.L.R. Art. 78. Federal law requires federal courts to give a prior state court judgment the same preclusive effect that the judgment would be given in courts of the state that issued the judgment. *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 466 (1982) (statute "requires federal courts to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged."); 28 U.S.C. § 1738 (1948). The statute applies to actions brought pursuant to 42 U.S.C. § 1983. *See Allen v. McCurry*, 449 U.S. 90, 103-04 (1980) (issue preclusion); *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 84-85 (1984) (claim preclusion). The Court, therefore, looks to New York law to determine what preclusive effect the prior judgment in the Article 78 Proceeding has in this case.

The general legal principles concerning the doctrine of collateral estoppel are well settled: "Under the doctrine of collateral estoppel (issue preclusion), a [party] is prevented from relitigating in a subsequent action an issue of fact or law that was fully and fairly litigated in a prior proceeding." *Austin v. Downs, Rachlin & Martin Burlington St. Johnsbury*, 270 F. App'x 52, 53 (2d Cir. 2008) (citation and internal quotation marks omitted).

> Under New York law, the doctrine of issue preclusion only applies if (1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding.

*Mejia v. N.Y. City Health & Hosps. Corp.*, 622 F. App'x 70, 71 (2d Cir. 2015) (citations and internal quotation marks omitted).

> The litigant seeking the benefit of collateral estoppel must demonstrate that the decisive issue was necessarily decided in the prior action against a party, or one in privity with a party. The party to be precluded from relitigating the issue bears the burden of demonstrating the absence of a full and fair opportunity to contest the prior determination.

*Buechel v. Bain*, 97 N.Y.2d 295, 304 (2001) (citation omitted), *cert den. sub nom Bain v. Buechel*, 535 U.S. 1096 (2002).

In Telesford's Article 78 Proceeding in New York Supreme Court, the judge decided several issues raised in this § 1983 lawsuit. He addressed Telesford's objections: (1) that he had not received a copy of the rule he was accused of violating; (2) that he received no, or poor, administrative assistance with the Tier III hearing; (3) that he was not permitted to call the watch commander as a witness; and (4) that Esgrow received off-the-record evidence bearing on the authenticity of Johnson's writing sample. *Telesford v. Annucci*, Index No. 2013-2073, RJI No. 2013-0662-M (N.Y. Sup. Ct. Feb. 6, 2014) (David M. Brockway, J.), *attached as* Ex. D to Levine Decl., Jun. 10, 2015, ECF No. 7-3. The only issue of those not fully decided by Judge Brockway was the last—Esgrow's receipt of off-the-record testimony concerning the authenticity of Johnson's writing sample. On that issue, Judge Brockway found that, "[t]he strength of the evidence against petitioner, however, encroaches upon the Appellate Division's 'substantial evidence' jurisdiction and the court, therefore, transfers this issue, as well as petitioner's remaining contentions, for review by the Third Judicial Department." *Id.* at 5–6. The Third Department issued a one-line decision: "Determination confirmed. No opinion." *In re Telesford v Annucci*, No. 518458 (N.Y. App. Div. 3d Dep't Nov. 6, 2014), *attached as* Ex. F to Levine

Decl., Jun. 10, 2015, ECF No. 7-4. The New York Court of Appeals denied leave to appeal. *In re Telesford v. Annucci* (May 7, 2015), *attached as* Ex. H to Levine Decl., Jun. 10, 2015, ECF No. 7-4. From this history, the Court concludes that the first three issues outlined above were finally decided by the state court. The remaining issues were not.

The next question to address is whether Telesford and Defendants had a full and fair opportunity to litigate the issues. Defendants contend that they did. Telesford, however, argues that the record before the New York courts included an incomplete Tier III hearing transcript, did not include the handwriting sample from Johnson, and that Judge Brockway was not made aware that Johnson was found guilty of authoring the contraband letter found in his cell and on which Telesford's conviction was based. Telesford does not detail what portion of the Tier III hearing transcript was incomplete and whether it referred to any of the issues decided by Judge Brockway in the Article 78 Proceeding. The Court, therefore, concludes that the issues decided in the Article 78 Proceeding collaterally estops Telesford from raising them here. Those issues are: (1) that Telesford had no prior knowledge of Rule 103.15; (2) that Telesford received no or inadequate assistance in preparation for the Tier III hearing; and (3) that Esgrow denied Telesford's request to call the watch commander as a witness. The Court will now address the remaining issues.

### *Due Process Claims*

In paragraph twenty-four of his complaint, Telesford contends that Esgrow, the hearing officer, violated his due process rights at the hearing and that the superintendent was grossly negligent in managing Esgrow. As discussed above, Telesford's allegation the superintendent was grossly negligent fails.

Telesford's contention that no handwriting expert was called to compare the writing on the note with his own handwriting does not support the allegation that the superintendent was negligent. Although Telesford complains that Esgrow did not call a handwriting expert, he has not shown that one was available to be called. *See Elder v. McCarthy*, No. 14-CV-6216-CJS, 2017 WL 2720007 (W.D.N.Y. Jun. 23, 2017) ("MacIntyre's failure to arrange for the testimony of a handwriting expert does not amount to a constitutional violation."). The contraband letter and the sample from Telesford were available to Esgrow, and are part of the record before the Court. Because Esgrow himself made the comparison between Telesford's handwriting and the handwriting on the contraband letter, his conclusion that Telesford was the author of the contraband letter is sufficient to support the due process necessary in a prison disciplinary hearing. *C.f. Lewis v. Johnson*, No. 9:08-CV-482 (TJM/ATB), 2010 WL 378571 (N.D.N.Y. Aug. 5, 2010) (although hearing officer did not make handwriting comparison himself, prisoner's due process rights were not violated by his reliance on testimony of others who had seen handwriting). A trier of fact is competent to compare a handwriting sample to a known exemplar and come to a conclusion about the authenticity of the writing. Vol. 5 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence*, § 9.01.03[7][a] (Mark S. Brodin, ed., Matthew Bender 2d ed. [2018]).

Telesford relies on the decision in *Matter of DeVivo v. Selsky*, 52 A.D.3d 1009, 860 N.Y.S.2d 239 (N.Y. App. Div. 3d Dep't 2008) to argue that Esgrow did not have substantial evidence with which to convict him. Specifically, he contends that since Johnson's hand-writing sample consisted only of his cursive signature on a form, the form was an insufficient sample from which to conclude Johnson did not write the contraband letter and that Telesford did write it. However, the facts in *DeVivo* are distinguishable from this case. In *DeVivo*, the appellate court wrote, "[h]owever, the letter at issue was written in cursive, and all of petitioner's handwriting samples were printed except for those portions bearing his signature." *Matter of DeVivo*, 52 A.D.3d at 1010. Here, Esgrow had several samples of Telesford's handwriting as well as the contraband letter, all of which were in non-cursive hand lettering. Additionally, on the record before this Court, Johnson's affidavit is all hand lettered and is identical to the hand lettered portions of the form Esgrow used as Johnson's writing sample. Telesford's hand lettering style is evident in his memorandum:

Pl.'s Mem. of Law 28, Dec. 14, 2016, ECF No. 54. One of the Telesford handwriting samples provided to Esgrow is the same:

The hand lettering in the contraband letter closely resembles Telesford's:

Contraband letter *attached as* Ex. C to Levine Decl., ECF No. 47-5. "The due process requirements for a prison disciplinary hearing are in many respects less demanding than those for criminal prosecution, but they are not so lax as to let stand the decision of a biased hearing officer who dishonestly suppresses evidence of innocence." *Edwards v. Balisok*, 520 U.S. 641, 647 (1997). Nothing in the Tier III hearing transcript, which Telesford and defense counsel corrected, hints that Esgrow was biased or suppressed evidence of Telesford's innocence. "The touchstone of due process is protection of the individual against arbitrary action of government, *Dent* v. *West Virginia*, 129 U.S. 114, 123 (1889)." *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974). Nothing in the record before this Court hints that Esgrow's decision was arbitrary.

"Once a court has decided that the procedural due process requirements have been met, its function is to determine whether there is some evidence which supports the decision of the prison disciplinary board." *Freeman v. Rideout*, 808 F.2d 949, 954 (2d Cir. 1986). Even if the Johnson handwriting exemplar is excluded because of the off-the-record authentication testimony, the conspicuous resemblance between Telesford's hand lettering and the hand lettering in the contraband letter is "some evidence" that the author of each was the same.

The Supreme Court, in the seminal case on due process for prisoners accused of disciplinary infractions that result in denial of a liberty interest, wrote:

> Two of the procedures that the Court held should be extended to parolees facing revocation proceedings are not, but must be, provided to prisoners in the Nebraska Complex if the minimum requirements of procedural due process are to be satisfied. These are advance written notice of the claimed violation and a written statement of the factfinders as to the evidence relied upon and the reasons for the disciplinary action taken.

*Wolff v. McDonnell*, 418 U.S. 539, 563 (1974). Telesford's Tier III hearing met those minimal due process requirements.

Therefore, the Court determines that Telesford has failed to raise a material fact precluding summary judgment, and that Esgrow and the superintendent have shown their entitlement to judgment.

### Affirmance of the Disciplinary Decision

Telesford claims that Albert Prack ("Prack"), Director of Special Housing and Inmate Disciplinary Program, "blatantly violat[ed] Plaintiff's Fourteenth Amendment procedural due process rights at his superintendent's hearing." Compl. ¶ 19, Apr. 3, 2015, ECF No. 1. The only act Prack took was to affirm Esgrow's Tier III hearing decision. Review of Superintendent's Hearing, No. 02A0506, *attached as* Ex. V to Levine Decl., Jun. 10, 2015, ECF No. 7-3. That act is insufficient to establish a federal constitutional violation. *Abdur-Raheem v. Selsky*, 598 F. Supp. 2d 367, 370 (W.D.N.Y. 2009).

**CONCLUSION**

For the reasons stated above, Defendants' application for summary judgment, ECF No. 47, is granted. The Clerk will enter judgment for Defendants and close the case.

DATED:      August 13, 2018
              Rochester, New York


                                   /s/ Charles J. Siragusa
                                   CHARLES J. SIRAGUSA
                                   United States District Judge